Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XII

| MILTON ANEL PÉREZ ACOSTA<br><br>Demandante Apelado<br><br>v.<br><br>THELMA MUÑOZ PAGÁN<br><br>Demandada Apelante | KLAN202400874 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Civil Núm.:<br>MZ2021CV00118<br>(Salón 306)<br><br>Sobre:<br>Liquidación de Comunidad de Bienes |
|---|---|---|

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Candelaria Rosa, la Jueza Rivera Pérez y la Jueza Díaz Rivera.

Candelaria Rosa, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 16 de diciembre de 2024.

Comparece la señora Thelma Muñoz Pagán (señora Muñoz Pagán o apelante) mediante recurso de apelación y solicita que revoquemos la *Sentencia* del Tribunal de Primera Instancia, Sala de Mayagüez, emitida el 26 de agosto de 2024. En dicho dictamen, se ordenó la liquidación de un inmueble y se adjudicó su dominio a favor del señor Milton Anel Pérez Acosta (señor Pérez Acosta o apelado). Por los fundamentos que expresaremos, confirmamos la *Sentencia* recurrida.

En síntesis, el caso de epígrafe trata de una demanda por liquidación de comunidad de bienes. Según el expediente, la señora Muñoz Pagán y el señor Pérez Acosta, durante un matrimonio bajo régimen de separación de bienes que eventualmente se declaró nulo *ab initio*, adquirieron como dueños y titulares, en común y proindiviso, el

apartamento número B-201, del Condominio Cayo del Sol, en Cabo Rojo, por la suma de ciento ochenta mil ($180,000.00) dólares y dividido por el cincuenta (50%) por ciento de participación, sin haberse requerido la firma de la señora Muñoz Pagán.

Ahora bien, según concluyó el Tribunal de Primera Instancia— ya que no contamos con una cantidad significativa de evidencia documental pertinente—el precio total de la transacción ascendió a ciento ochenta y cuatro mil seis cientos sesenta y siete dólares con setenta y nueve dólares ($184,667.79), al cual se aportó ciento cuatro mil seis cientos sesenta y siete dólares con setenta y nueve centavos ($104,667.79) al pronto y los gastos de cierre. Consecuentemente, la diferencia de ochenta mil ($80,000.00) dólares fue financiado por las partes mediante un préstamo del Banco Popular de Puerto Rico (Popular Mortgage) y la cual, de su parte, se suscribió mediante un pagaré hipotecario en la Escritura Núm. Doscientos Ochenta y Cuatro (284), sobre Primera Hipoteca, otorgada por el Notario Público Roberto M. García Rodríguez. Tal obligación vencerá el 1 de enero de 2027.

Aunque el señor Pérez Acosta nunca le requirió a la señora Muñoz Pagán el pago de la mitad del pronto pago o de los gastos de cierre, la apelante asumió la deuda conjuntamente y ambos acuerdan que el pago de la hipoteca se hará en partes iguales. Por tanto, la señora Muñoz Pagán firmó el pagaré que la convirtió en deudora de Popular Mortgage, junto a su entonces esposo. No obstante, para finales del año 2023 y luego de las partes nuevamente contraer matrimonio bajo el régimen de separación de bienes, ambas partes adeudaban en su *escrow account* diez mil quinientos treinta y nueve con noventa y un centavos ($10,539.91) en el balance de hipoteca y, para principios del 2021, el

inmueble adeudaba veinticinco mil setenta y nueve dólares con veintitrés centavos ($25,079.23) al Centro de Recaudación de Ingresos Municipales (CRIM). Luego de una demanda de cobro presentada por el Consejo de Titulares del Condominio Cayo del Sol, el señor Pérez Acosta saldó la deuda de mantenimiento mediante el pago de alrededor de mil cuatrocientos veinticinco dólares con veinte centavos ($1,425.20) y, ante un pago de tres mil doscientos sesenta y siete dólares con treinta y dos centavos ($3,267.32) hecho por la señora Muñoz Pagán, el apelado resultó con un crédito de mil seis cientos treinta y tres dólares con sesenta y seis centavos ($1,633.66) en su contra.

Ante todo lo anterior (1) el Popular Mortgage debitó al señor Pérez Acosta, por concepto de pagos a la hipoteca, la cantidad de ciento trece mil ciento setenta dólares con sesenta y siete centavos ($113,170.67); (2) el apelado pagó por concepto de mantenimiento del inmueble la suma de cuarenta y cuatro mil setecientos ochenta y cuatro ($44,784.00) dólares; y (3) pagó por concepto de pagos al CRIM un total de dieciocho mil ciento once dólares con setenta y un centavos ($18,111.71), todo para un total de ciento setenta y seis mil sesenta y seis dólares con treinta y ocho centavos ($176,066.38) por la adquisición y pago de cargas y obligaciones del inmueble. Por tanto, existe un crédito a favor del señor Pérez Acosta de (1) cincuenta y seis mil quinientos ochenta y cinco dólares con treinta y cuatro centavos ($56,585.34) por concepto de pago de hipoteca; (2) veintidós mil trecientos noventa y dos ($22,392.00) dólares por concepto de mantenimiento; y (3) nueve mil cincuenta y cinco dólares con ochenta y seis centavos ($9,055.86) por concepto de pagos al CRIM, todo por

lo cual totaliza en ochenta y ocho mil treinta y tres dólares con diecinueve centavos ($88,033.19) por concepto de la adquisición y pago de cargas y obligaciones.

Luego de las partes divorciarse el 18 de diciembre de 2020 por la casual de ruptura irreparable, el señor Pérez Acosta presentó una demanda de solicitud de liquidación del inmueble en controversia. En su respuesta y posteriores mociones, la apelante afirmó su deseo de separarse de la comunidad del inmueble y confirmó que había una oferta formal para comprar el apartamento a una suma de ciento cuarenta mil ($140,000.00) dólares. Además, solicitó que se ordenara la venta del apartamento y se consignara en el foro primario el balance neto de la compraventa. Sin embargo, el apelado alegó que le interesaba retener la propiedad para sí y que tenía créditos cuantiosos. Más adelante, la señora Muñoz Pagán alegó que el señor Pérez Acosta se negó a resolver lo relacionado con la deuda del CRIM y de acogerse a la amnistía, más que la posición del apelado provocaba que las deudas relacionadas aumentaran para luego pagarlas y solicitar créditos por lo pagado.

Evaluada la evidencia y celebrada una vista, el foro primario concluyó que (1) la equidad neta del inmueble asciende a ciento dos mil trescientos veintiocho dólares con veintitrés centavos ($102,328.23), cual corresponde al valor de ciento treinta y cinco mil ($135,000.00) dólares según la tasación hecha para el litigio, menos la deuda hipotecaria de veintidós mil ciento treinta y un dólares con ochenta y seis centavos ($22,131.86) y la reflejada en el *escrow account* por diez mil quinientos treinta y nueve dólares con noventa y un centavos ($10,539.91), para un total de deudas de treinta y dos mil seis cientos

setenta y un dólares con setenta y siete centavos ($32,671.77). Igualmente, el foro primario reconoció que cada parte tiene una participación en equidad por un valor de cincuenta y un mil ciento sesenta y cuatro dólares con doce centavos ($51,164.12), a la cual se le resta mil seis cientos treinta y tres dólares con sesenta y seis centavos ($1,633.66) de la participación del señor Pérez Acosta para un total de cuarenta y nueve mil quinientos treinta dólares con cuarenta y seis centavos ($49,530.46). Mientras tanto, tal cantidad de crédito se le sumó a la participación de la señora Muñoz Pagán, para un total de cincuenta y dos mil setecientos noventa y siete dólares con setenta y ocho centavos ($52,797.78).

Por los créditos a favor del señor Pérez Acosta ser por la cantidad de ochenta y ocho mil treinta y tres dólares con diecinueve centavos ($88,033.19) y exceder el valor de su participación, el foro primario restó dicho crédito de la participación de la señora Muñoz Pagán, es decir, se restó cincuenta y dos mil setecientos noventa y siete dólares con setenta y ocho centavos ($52,797.78) de los ochenta y ocho mil treinta y tres dólares con diecinueve centavos ($88,033.19) pagados por concepto de la adquisición y pago de cargas y obligaciones, dejando a la apelante con treinta y cinco mil doscientos treinta y cinco dólares con cuarenta y dos centavos ($35,235.42) de participación y deficiencia y, consecuentemente, anulando la participación en equidad.

Como resultado, el foro primario ordenó la liquidación del inmueble, la adjudicación de la propiedad a favor del señor Pérez Acosta, la inscripción de dicho dominio en el Registro de la Propiedad y que la señora Muñoz Pagán pagara treinta y cinco mil doscientos treinta y cinco dólares con cuarenta y dos centavos ($35,235.42) a favor

del apelado. Oportunamente, la señora Muñoz Pagán solicitó reconsideración, la cual el foro primario resolvió sin lugar.

Insatisfecha, la apelante recurre ante este Tribunal y alega que foro primario erró (1) al declarar ha lugar la demanda y ordenar al Registrador de la Propiedad a inscribir el dominio completo del inmueble a favor del señor Pérez Acosta; (2) al ordenar a la señora Muñoz Pagán pagar la cantidad de treinta y cinco mil doscientos treinta y cinco dólares con cuarenta y dos centavos ($35,235.42) al señor Pérez Acosta y que existe una deuda correspondiente al balance negativo neto de los créditos; y (3) al declarar sin lugar la solicitud de reconsideración de la apelante. Además, la señora Muñoz Pagán alude un su recurso que el foro primario no apreció correctamente la evidencia y que el señor Pérez Acosta omitió presentar prueba pertinente a la controversia. La parte apelada no presentó su alegato aun cuando se le dio la oportunidad.

Vale recordar que en nuestro ordenamiento jurídico se presume que los tribunales primarios actúan con corrección, por lo que compete a la parte apelante la obligación de demostrar lo contrario. *Morán v. Martí*, 165 DPR 356 (2005) (*Per Curiam*). Dicho de otro modo, los foros apelativos debemos otorgar gran deferencia a las determinaciones de hechos, la apreciación de la prueba testifical y las adjudicaciones de credibilidad que hacen los foros primarios. *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310 (2021). Ello responde a que la deferencia judicial está predicada en que los jueces de las salas de instancia están en mejor posición para aquilatar la prueba testifical ya que tienen la oportunidad de oír, ver y apreciar el comportamiento del testigo. *Barreto Nieves et al. v. East Coast,* 2024 TSPR 40, 213 DPR

___ (2024); *Pueblo v. Hernández Doble*, 210 DPR 850 (2022); *Ortiz Ortiz v. Medtronic,* 209 DPR 759 (2022); *Gómez Márquez et al. v. El Oriental,* 203 DPR 783 (2020); *Pueblo v. Toro Martínez*, 200 DPR 834 (2018). A esos efectos, "la facultad de los tribunales apelativos para sustituir el criterio de los tribunales de instancia se reduce a aquellas circunstancias en las que, a la luz de la prueba admitida, no exista base suficiente que apoye su determinación". *Santiago Ortiz v. Real Legacy et al.,* 206 DPR 194, 220 (2021). Por tanto, los foros revisores no deben intervenir con las determinaciones de hechos de los jueces de instancia, salvo que medie error manifiesto, pasión, prejuicio o parcialidad. Íd. (citando a *Ortiz Ortiz v. Medtronic*, *supra*; *Santiago Ortiz v. Real Legacy et al.*, *supra*).

Ahora bien, es norma trillada de derecho que las partes tienen el deber de observar rigurosamente las disposiciones reglamentarias establecidas para la forma, contenido, presentación y notificación de los escritos ante nos. *Hernández Jiménez et al. v. AEE et al.*, 194 DPR 378 (2015). Ello ante la necesidad de colocar a los tribunales apelativos en posición de decidir correctamente los casos, contando con un expediente completo y claro de la controversia que tiene ante sí. *Soto Pino v. Uno Radio Group*, 189 DPR 84 (2013). Asimismo, cuando la parte recurrente o apelante impugne la apreciación o suficiencia de la prueba presentada ante el foro primario, dicha parte deberá presentar alguna recopilación de la prueba oral, tal como la transcripción, la exposición estipulada o exposición narrativa. *Pueblo v. Pérez Delgado*, 211 DPR 654 (2023). Véase, también, Reglas 19, 20 y 21 del Tribunal de Apelaciones (4 LPRA Ap. XXII-B). Esto, pues en caso de no reproducirlos, el foro revisor no podrá cumplir a cabalidad su función

revisora ni podrá determinar si la decisión estaba o no apoyada en la evidencia sometida por las partes. *Pueblo v. Pérez Delgado*, *supra*. *Hernández v. San Lorenzo Const.*, 153 DPR 405 (2011). En estos casos, el foro apelativo solo podrá determinar sobre los apuntamientos de derecho. *Santos Green v. Cruz*, 100 DPR 9 (1971).

En el presente caso, no advertimos que el Tribunal de Primera Instancia haya abusado de su discreción o haya actuado de manera parcial, perjudicial o errada. Del expediente no se desprende suficiente evidencia con respecto a los hechos valorados por el foro recurrido que descarte su consideración de la controversia en los méritos o que sugiera que su valoración de los argumentos de cada parte hubiese sido incorrecta. Esto a pesar de que la apelante argumenta la ausencia de prueba, aunque sin ella misma presentar dichas pruebas ante este Tribunal. Más aun, por la apelante alegar en su recurso que el foro primario interpretó incorrectamente la evidencia documental, la presentación de una transcripción de la prueba oral o una exposición narrativa de la misma era imprescindible. En definitiva, el foro de primera instancia tuvo ante sí la oportunidad de oír y ver la prueba documental y oral acontecida, ergo estuvo en mejor posición que esta curia para aquilatar la evidencia desfilada.

Por tanto, visto que la apelante no nos coloca en posición de ejercer un juicio distinto al emitido por el Tribunal de Primera Instancia sobre los argumentos emitidos en corte abierta, convenimos a su criterio en la determinación de liquidar el inmueble en controversia y adjudicar el dominio de este a favor del apelado.

Por los fundamentos expresados, confirmamos la *Sentencia* recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del

Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones